IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TINA L. H.,[1]

   Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

   Defendant.

Civil No. 18-cv-1699-DGW[2]

## MEMORANDUM and ORDER

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB in August 2013, alleging a disability onset date of May 31, 2012. After holding two evidentiary hearings which included the testimony of an independent medical expert, an ALJ denied the application on September 6, 2017. (Tr. 16-36). The Appeals Council denied plaintiff's request for review, rendering the ALJ's decision the final agency decision. (Tr. 1). Plaintiff exhausted her administrative remedies and filed a timely complaint with this Court.

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 11, 24.

## Issue Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ gave too much weight to the opinion of the medical expert, Dr. Puestow.

2. The ALJ did not properly evaluate plaintiff's RFC.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The plaintiff bears the burden of proof at steps 1–4. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in

significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 2019 WL 1428885, at *3 (S. Ct. Apr. 1, 2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### **The Decision of the ALJ**

The ALJ followed the five-step analytical framework described above. He

determined that plaintiff had not worked since the alleged onset date. The ALJ found that plaintiff had severe impairments of fibromyalgia, chronic sinusitis, headaches, polycystic ovary syndrome, mild obstructive sleep apnea, hypersomnia, obesity, depression, and anxiety, which did not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to do work at the medium exertional level, with the following limitations:

> She could sit for four hours at one time, and stand or walk for three hours at one time. She could sit for a total of eight hours in an eight-hour workday, and could stand or walk for a total of eight hours in an eight-hour workday. She could not climb ladders, ropes, and scaffolds. She had to avoid hazards such as unprotected heights and moving or dangerous machinery. She could frequently climb stairs and ramps. The claimant could frequently balance. She could frequently stoop, kneel, crouch, and crawl. She had to avoid concentrated exposure to humidity, extreme temperatures, and pulmonary irritants such as dust, odors, and fumes. She was limited to work involving simple, routine tasks and simple work-related decisions. She was limited to low stress work with only occasional interaction with the public, occasional decision-making, and occasional changes in the work setting.

The ALJ found that plaintiff could not do her past relevant work. Based on the testimony of a vocational expert, the ALJ found that plaintiff was not disabled because she was able to do other jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff. As plaintiff's points relate only to her physical limitations, the Court will not summarize the mental health evidence.

1. **Agency Forms**

Plaintiff was born in 1978 and was 34 years old on the alleged onset date. (Tr. 297). She said she was disabled because of fibromyalgia, chronic fatigue syndrome, depression, anxiety, GERD, thyroid problems, sinus problems, and allergies. She had completed one year of college. She had worked as a lead developer, lead programmer, and order facilitator in the printing industry. Her most recent job was as a customer service agent in a call center. (Tr. 301-303, 341).

2.  **Evidentiary Hearings**

The first hearing was held in January 2017. Plaintiff was represented by an attorney. (Tr. 74).

Plaintiff lived with her parents. (Tr. 83).

Plaintiff testified that she left her last job in a call center because she was having problems making it in to work because she was too tired. She had anxiety attacks from physical stress. The stress of trying to keep up with the calls made her anxiety and fatigue worse. She said that the main reason she was unable to work was fatigue, which she separated into two parts: drowsiness and physical fatigue. She had to sleep about 15 hours a day, or her fibromyalgia pain flared up. During the day, she was drowsy. If she was active, her pain flared up. Her pain medications helped with the day-to-day pain, but not with the extra pain. (Tr. 85-86). She had tried treating her fibromyalgia pain with stretches and water therapy, but this caused her to have "huge" flares. (Tr. 89-90).

After the first hearing, the ALJ submitted medical interrogatories to an independent medical expert, Dr. Eric Puestow. Dr. Puestow stated that plaintiff's

impairments did not meet or equal a Listing. He said plaintiff was capable of medium exertion work, with limitations similar to those assessed by the ALJ in his decision. (Tr. 1410-1418).

The second hearing was held in July 2017. Plaintiff was represented by an attorney. (Tr. 48).

Dr. Puestow corrected his answers to the medical interrogatories. He said that he had mistakenly indicated that plaintiff was never able to stoop, kneel, crouch, and crawl. In fact, she was able to do so frequently. (Tr. 52).

Upon questioning by plaintiff's attorney, Dr. Puestow testified that he no longer did patient care. He only did consultative work for about ten hours a week. He had taken care of patients with fibromyalgia while in practice. He testified that fibromyalgia by itself could never be severe enough to limit a person to sedentary work. He described fibromyalgia as a "very controversial issue." He testified that it has never been completely resolved whether fibromyalgia is really a physical disorder. However, he also stated that his RFC assessment included limitations related to fibromyalgia. He stated that the "treatments of choice" for fibromyalgia are not rest or medications; they are physical activity and good sleep hygiene. Dr. Puestow clarified that he had never seen a case where fibromyalgia by itself would limit a person to less than a full range of sedentary work, but fibromyalgia along with other medical and/or psychological conditions might. He noted that SSR 12-2 says that fibromyalgia might equal a Listing in severity, for example, the Listing for rheumatoid arthritis, and stated that fibromyalgia might occur in combination with other rheumatologic disorders, but that was not the case here. (Tr. 53-58).

Dr. Puestow stated that there were allegations of widespread pain in this case, but "pain is nothing that can be objectively proven or disproved." He said the medical records showed that she had positive tender points for fibromyalgia. He could not assess associated cognitive problems because he was not a psychologist or psychiatrist. Counsel stated that the basis for plaintiff's claim of disability was her excessive fatigue. Dr. Puestow stated that "fatigue is not an objective finding" that could be proved or disproved. He again said that the treatment for fibromyalgia is activity, not rest, and that, if plaintiff has excessive fatigue, he would look to her anxiety and depression as a possible cause. (Tr. 58-61).

Counsel questioned Dr. Puestow on the effects of plaintiff's hypersomnia. The doctor agreed that he would expect plaintiff to have episodes of lack of focus or even falling asleep on the job, but he was unable to give an opinion as to how frequently that might happen. He noted it would depend on her response to treatment. (Tr. 62-63).

A vocational expert (VE) also testified. The ALJ asked him a hypothetical question which corresponded to the RFC assessment. The VE testified that this person could not do plaintiff's past work, but she could do other medium and light exertional level jobs that exist in the national economy. (Tr. 68-70).

3.  **Relevant Medical Records**

Plaintiff's fibromyalgia was treated by Dr. Kathryn Coulson at St. Louis University Hospital. The first office note is dated April 2013. She had not seen Dr. Coulson since June 2012. She had labs done in the interval and had elevated TSH. She was started on medicine for her thyroid, but said she had no change in

her symptoms. She had been placed on a CPAP mask for sleep apnea and prescribed Nuvigil, which helped her stay awake with drowsiness but no overall fatigue. She complained of diffuse pain in her joints and muscles and difficulty with memory and cognition. She said she was "in too much pain to even do stretching." On exam, she was in no distress. She had 18 positive trigger points for fibromyalgia. Muscle tone was normal. The assessment was trigger points consistent with fibromyalgia. There was no serologic evidence of connective tissue disease or inflammatory arthritis. Dr. Coulson prescribed Gabapentin. Plaintiff also had hypermobility syndrome. Dr. Coulson prescribed physical therapy for training on joint protective strategies, range of motion stretching, and quad strengthening. (Tr. 655-658).

Plaintiff saw Dr. Coulson again in August 2013. Plaintiff said that Gabapentin had not helped and that she was unable to sleep with the CPAP machine. She said she was "too tired to do any exercise and any exercise caused her to be in extreme pain the next day." On exam, she again had 18 out of 18 tender points. Dr. Coulson recommended that she try light stretching and increase the dosage of Gabapentin. She also recommended that plaintiff's thyroid function be evaluated in connection with her fatigue. (Tr. 665).

Plaintiff returned to Dr. Coulson in October 2014. She had "insurance coverage difficulties" in the interim. Plaintiff said she had "severe fatigue." She was unable to sleep with the CPAP mask and took Nuvigil which helped her stay awake somewhat. On exam, she had no active synovitis, a full range of motion, tenderness with abduction of the shoulders, 18 out of 18 tender points, and knee

8

tenderness.  She had normal muscle tone.  Dr. Coulson again addressed the need for regular exercise, diet, and weight loss.  She noted that plaintiff had a positive ANA result on her blood work, but she suspected the "likely culprit" was autoimmune thyroiditis.  (Tr. 676-679).

Plaintiff saw Dr. Coulson four more times, in March 2015 (Tr. 1162), September 2015 (Tr. 1256), February 2016 (Tr. 1020), and August 2016 (Tr. 1343).  At each visit, Dr. Coulson recommended that plaintiff exercise.  In September 2015, the doctor noted that plaintiff had been diagnosed with Hashimoto's, a thyroid disorder.  She again recommended regular stretching, range of motion exercises, and light exercise.  Plaintiff "voiced her reluctance to do so because she believes it causes more pain."  The doctor discussed with plaintiff that "her deconditioning, with muscle weakness and tendon shortening and inflexibility is creating more pain and immobility," but plaintiff deferred any physical therapy.  (Tr. 1256-1259).  At the last visit, Dr. Coulson wrote that she "discussed again with patient at length recommendations and instructions for regular stretching, ROM, light exercise, [and] she again argues that this will make her symptoms worse."  Plaintiff was to follow up with the sleep medicine specialist for hypersomnolence and to continue taking Elavil at night for pain.  (Tr. 1347).

Plaintiff was treated in the sleep disorders clinic at St. Louis University Hospital.  In January 2015, a neurologist there noted that she had hypersomnia which was being treated with Nuvigil.[3]  She had been given samples and was

---

[3] "Nuvigil (armodafinil) is a medication that promotes wakefulness.  Nuvigil is used to treat excessive sleepiness caused by sleep apnea, narcolepsy, or shift work sleep disorder." https://www.drugs.com/nuvigil.html, visited on May 8, 2019.

awaiting insurance approval for Nuvigil.  She also had circadian rhythm disturbance/delayed sleep phase.  The doctor noted that she had failed chronotherapy, "mainly because she likely doesn't want 'normal' schedule on each day."[4]  (Tr. 1127- 1129).  Nuvigil had been approved by March 2016.  (Tr. 1031).  In February 2017, plaintiff told a doctor in the sleep disorders clinic that Nuvigil helped with drowsiness 2/3 of the time.  The doctor noted that plaintiff had "inadequate sleep hygiene" and recommended that she continue on her medication and pursue a healthy diet and exercise.  (Tr. 1500-1501).

## Analysis

Plaintiff's first argument fails because she is asking this Court to reweigh Dr. Puestow's opinion.

Plaintiff argues that the ALJ erred in accepting Dr. Puestow's opinion because, in her estimation, Dr. Puestow's testimony regarding fibromyalgia was incorrect.  She argues that Dr. Puestow testified, contrary to information published by the College of Rheumatology, the National Institutes of Health, Harvard Medical School, and the Social Security Administration, that fibromyalgia is "not a disease."  See, Doc. 20, p. 6.  Further, she suggests that Dr. Puestow is "behind on his [fibromyalgia] research, theories and treatment because he no longer practices medicine."  See, Doc. 20, p. 7.

Plaintiff's counsel raised similar arguments at the hearing.  (Tr. 71).  The ALJ addressed those arguments in his decision.  At Tr. 32, he explained that Dr.

---

[4] "Chronotherapy is a method to treat delayed sleep-phase syndrome in which bedtimes are gradually delayed by an increment of two to three hours each night until your desired bedtime is reached. The goal is to synchronize your sleep pattern so that you feel refreshed and functional." https://hospitals.jefferson.edu/tests-and-treatments/chronotherapy.html, visited on May 8, 2019.

Puestow testified that fibromyalgia could, in fact, be disabling when considered in combination with other impairments. The ALJ also recognized that SSR 12-2p establishes that a claimant can be found disabled based on fibromyalgia alone. He explained that his decision was not based solely on Dr. Puestow's opinion, but also on the weight of the evidence as a whole.

Plaintiff's argument Dr. Puestow's opinion is entitled to no weight because he does not believe that fibromyalgia can cause disabling symptoms fails because plaintiff ignores the totality of his testimony. While Dr. Puestow did state that he had never seen a case where a person was disabled because of fibromyalgia alone, he acknowledged that fibromyalgia could be disabling in combination with other impairments. Notably, plaintiff does not claim to be disabled because of fibromyalgia alone. Further, although Dr. Puestow referred to research into the nature of fibromyalgia and noted that there was some controversy, he testified that plaintiff did have fibromyalgia and that he considered it to be a medically determinable severe impairment. He acknowledged that SSR 12-2p says that fibromyalgia could be disabling depending on its severity, but also correctly noted that SSR 12-2p does not mandate that fibromyalgia always results in a finding of disability. He also pointed out that the treatment of choice for fibromyalgia is activity and good sleep hygiene, not rest. (Tr. 54-58). As the ALJ noted, that last observation is well supported by the record in this case. (Tr. 32).

To the extent that plaintiff is now arguing that Dr. Puestow was not competent to testify as a medical expert because he is not up-to-date on fibromyalgia research, the Court notes that plaintiff did not object at the hearing to

the doctor's qualifications to testify as a medical expert.

Plaintiff also ignores the ALJ's explanation that he found plaintiff not disabled based on the weight of the evidence, and not solely on Dr. Puestow's opinion. The ALJ cited to specific medical evidence indicating that plaintiff's symptoms were not as severe as she claimed. This evidence included repeated observations that plaintiff appeared healthy and was in no apparent distress, that she ambulated normally, and had normal muscle tone with no specific motor weakness or muscle atrophy. He also noted that plaintiff failed to follow her doctor's repeated recommendation to be more active and to exercise. (Tr. 30-31).

Plaintiff also argues that Dr. Puestow's opinion should have been rejected because he failed to consider substantial evidence, including plaintiff's allegation of excessive fatigue. See, Doc. 20, p. 8. This ignores Dr. Puestow's testimony that he limited her to no climbing of ropes, ladders or scaffolds, and no exposure to workplace hazards due to her sleep apnea and hypersomnolence. (Tr. 61).

Plaintiff has not demonstrated that the ALJ erred in accepting Dr. Puestow's opinion. At best, her argument suggests reasons why his opinion could be weighed differently. That, however, is an appeal to this Court to reweigh the opinion, which is well beyond the scope of judicial review. *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1153 (7th Cir. 2019).

Plaintiff also argues that the ALJ failed to properly consider her allegations of pain, citing *Carradine v. Barnhart*, 360 F.3d 751 (7th Cir. 2004). In that case, the Seventh Circuit recognized that physical symptoms may have a psychiatric origin; not all physical symptoms result from physical causes which can be objectively

detected. *Carradine,* 360 F.3d at 755. This does not mean, of course, that the ALJ can never consider the absence of objective medical evidence in weighing the accuracy of the plaintiff's claims. As the Seventh Circuit later explained, the error in *Carradine* was that the ALJ "failed to appreciate the psychological nature of the claimant's somatoform disorder and relied primarily on the lack of objective medical data to support his conclusions." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). Here, of course, plaintiff has not been diagnosed with somatoform disorder and she points to no evidence suggesting that she was experiencing physical pain resulting from a psychological condition.

Plaintiff's second point is somewhat difficult to follow, but she appears to be arguing that the RFC assessment was not supported by substantial evidence because the ALJ failed to recognize evidence that some of her sleep issues were not amenable to treatment with CPAP. In support, she cites evidence from 2013 and 2014. See, Doc. 20, p. 12-13. Plaintiff ignores the medical evidence cited by the ALJ which contradicted her claim of disabling fatigue. (Tr. 30-31). As with her first point, plaintiff's argument does not grapple with the "meat" of the ALJ's decision, and therefore is not persuasive.

Lastly, plaintiff faults the ALJ for pointing out that her doctor noted that she was goal-directed in her thinking and had intact thought processes. She argues that those are "psychiatric phrases which have no necessary relation to one's ability to work full-time." See, Doc. 20, p. 14. This argument is puzzling. Plaintiff applied for disability benefits based on both physical and mental impairments. The ALJ made the cited observations in assessing the effects of her mental

impairments. As plaintiff does not argue here that the ALJ erred in assessing her mental RFC, it is difficult to see how his remarks could possibly be relevant error.

This is not a case in which the ALJ failed to discuss evidence favorable to the plaintiff or misconstrued the medical evidence. Plaintiff's arguments are little more than an invitation for this Court to reweigh the evidence. She has not identified a sufficient reason to overturn the ALJ's conclusion.

Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester,* 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## Conclusion

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE:** May 9, 2019.

*[signature: Donald Wilkerson]*

**DONALD G. WILKERSON**
**U.S. MAGISTRATE JUDGE**